Good morning, Your Honors. My name is Armina Ibrahimian, and I represent the petitioner, Ni Hong Wu. Could you speak up a little, Kelsey? I'm having some trouble here. Sorry, of course. So the petitioner is a native and citizen of China. The petitioner was 17 years old when he found out that his 20-year-old girlfriend was pregnant. The petitioner moved in with his girlfriend, and the family decided to have a traditional wedding ceremony. They couldn't legally marry because they weren't of the legal age to marry. Do you know what the legal age is in China? I do. So for males, it's 22, and for females, 20. Thank you. So therefore, they did have a traditional wedding ceremony. And the petitioner's wife was two months pregnant when six family planning officials came into their home, rushed in, and stated that somebody reported that there was a violation of the family planning laws. And the petitioner's wife had to be taken to the hospital for the abortion. The petitioner did resist. He tried to stop them, but he was hit in the face, kicked in the stomach, and beaten repeatedly to a point where his nose was bleeding. And he was held down by three officials while the wife was taken away. The petitioner testified that it took him a month to heal from those wounds. Did he have any medical treatment? No, he did not. The Board of Immigration Appeals assumed arguendo that the petitioner credibly demonstrated that his wife was forced to have the abortion. The BIA also assumed arguendo that the petitioner did demonstrate resistance. The key issue was whether he suffered past persecution, meaning what the officials did to him amounted to persecution. A lot of your brief, a lot of your opening brief is occupied with a discussion of credibility and disagreement. That's off the table, isn't it? The BIA accepted. I agree, but I was told by my office that just address the issue just in case. So I did throw that. We did throw that in our brief, but I agree that the key issue here is whether there's past persecution. What do you say about Jang? That's something that's important to me. It wasn't even mentioned in your opening brief. It's a bit of a miss to not have gotten Jang. It's true. So Jang is definitely a key case that supports my argument. In Jang, he was detained for one day. He wasn't physically abused. However, the Ninth Circuit did find that there was past persecution. There's a few other things that happened in Jang. For example, he was expelled from school due to the romantic relationship. He was also, the day of their wedding ceremony, they came to arrest him and he ran away. But I do find that Jang definitely supports our argument that there is past persecution. Well, he had to go into hiding, didn't he? He did. And in your case, the two lived fairly openly for several months in the same province. In the same province, but the province is huge and they did move away to the aunt's home. So they did definitely hide. And in this case... Hiding meaning they just moved out and lived in the aunt's home. But they were hiding. It's true, they didn't leave the province, but it is a huge province and they did stay at the aunt's home. Right. And the officials at first were requiring her to have an IUD inserted. She didn't do that. She didn't do it. And there were no repercussions. No, there weren't. And they did have to pay a fine, and they did pay the fine, and then they moved. So, I mean, my argument is basically that he did suffer past persecution. And if we look at the totality of the circumstance, here's a 17-year-old kid. And, of course, in the eyes of the community, they were married. And his wife, who's two months pregnant, is being violently taken away to have a very intrusive procedure done that he doesn't want done. He is being slapped, kicked, hit repeatedly to a point where his nose is bleeding. And that in itself is psychological trauma, and it is physical abuse as well. Do you draw a distinction, or should we draw a distinction, between being punished for violating a policy and resisting a policy? The persecution is based upon his political position in resisting a policy. If I smoke marijuana and get arrested and punished for that, that's not necessarily resisting the policy of making marijuana illegal. Isn't there a distinction between resisting a policy and getting roughed up a bit for violating the policy? Well, fortunately, we do have the regulations that say that the term refugee defines past persecution, which includes someone who is being forced to undergo a procedure. They do address the coercive population control policy in Section 101-42 for what defines a refugee. So fortunately, our laws do recognize that forced abortion is, and if you do resist, and if there is persecution based on that, that amounts to persecution. So it's true, he did, and technically, they are violating the laws. But in this country, we do recognize that as persecution if you're done, if it's forced, if they take you against your will and say that you have to abort the child and you resist. But the law is that if you're the spouse of someone who's had this forced abortion, that is not enough to get you a finding. There has to be something in addition to that. It's a factor that can be considered when your spouse has this, but not something that will get you there. And I guess I'm trying to figure out what got him here, other than a bloody nose, and how he actually resisted the policy. I think that there's little question that he resisted. Even the BIA said, assuming arguendo, he resisted. I mean, he did try to stop them, and even in Jiang, there's actually no physical stopping. But because they went to get the marriage license, and because they were living together, the Ninth Circuit did find that there is resistance. Even there was less resistance in Jiang. So I think in this case, the issue isn't resistance since the BIA is assuming there is. I think the issue is whether that hitting on the face, kicking, and what they did to him amounts to past persecution. So what do you make of the BIA's decision in matter of GS, where it ruled that for the physically persecuted spouse remains in China, there will rarely be affirmative evidence that the spouse seeking refugee status resisted the coercive policy. What do you do with that ruling? I'm sorry, repeat that again? Are you familiar with the case of matter of JS? Yes, I am. If the spouse who was subjected to the forced abortion remains in China, the spouse who was not subjected to the procedure leaves, it's hard to say that the spouse who left is resisting the policy. What do you do with that ruling from the BIA? I don't interpret matter of JS to say that. I mean, I think the issue of resistance is did you resist when the act occurred? I think even in matter of JS there was no issue of the resistance. But I think the issue is you leave behind and nothing happens to her, and maybe there's no fear of future persecution. Meaning your wife is there, no one is coming to arrest her, and now you're in the United States and there's really no fear of anything happening to you if you return. And that argument, in this case we're arguing that there is past persecution. So if we establish past persecution and there's a rebuttable presumption of a well-founded fear pursuant to ACFR Section 208.13. So my argument is now the British shifts to the government to demonstrate that there has been a fundamental change in China, that the petitioner no longer has a well-founded fear. So you would find past persecution in any situation where the spouse or partner of a woman who's taken up by the police and forced to have an abortion, where he resists them and gets thumped and has to pay a fine, that constitutes past persecution? I think that if we take, in this case if we take the totality of the circumstance, the fact that he was just a teenager, the fact that he was punched, kicked, beaten, held down, bloody-nosed, the fact that it took him a month to recover from his injuries, I think in this case, yes, I do find past persecution. Of course, if you ask me if I witnessed my spouse being taken away to have something intrusive done to his body, I'm going to say that I was persecuted. So I mean, it's true, it depends on how severe the beating is, but you don't necessarily need to even show that he was necessarily beat up to found past persecution. For example, Jiang the older, there was no physical violence. He was taken into custody for one night, but the Ninth Circuit still found there was past persecution. Mr. Ni was never taken into physical custody. He was never taken into custody. It was just that physical, what happened to him when he was beaten, punched, kicked, and held down. So what do you make of our standard of review? We have to say that a reasonable adjudicator would be compelled to conclude the opposite. Do you think that this case meets that standard? I do. I do find that the case law is in our favor. I do. I do feel that even though it's true, it's not that he was severely, the beating wasn't to a point where he needed to be hospitalized, but I do believe that if you take the totality of the circumstance, he was 17 years old. I mean, just witnessing your wife being taken away to be violated, if you ask me enough, but it's true. In this case, there was also physical abuse. His nose bled. He was kicked in the stomach, kicked in the face. He was definitely physically harmed. So I do believe that he did suffer past persecution. All right. Thank you, Counsel. You've exceeded your time. We'll give you one minute for rebuttal. Thank you. Please proceed, Counsel. May it please the Court, this is Lindsay Corliss for the Respondent. The Court should deny the petition for review and uphold the agency's decision denying asylum, withholding of removal, and cat protection. This is a case involving past persecution. Petitioner testified to the following facts. On August 20, 2007, his wife was forcibly taken to get an abortion. Was he detained while his wife was taken for an abortion? He was held in his home for one hour. So how do these facts differ from Jang in any significant way? Well, during the persecutory event where Jang's wife was being taken, first to get a medical examination and then for an abortion, Jang was actually detained by the police in their office for 24 hours. So Jang was detained while the abortion was carried out. Yes. And the petitioner here was also detained while the abortion was carrying out, except that one was a detention in the home and the other one was in a jail facility. Yes, for one day rather than for one hour. Also, another difference between this case and Jang has to do with the repeated contact that Jang had with the police. The court in Jang noted that it was looking at the totality of the circumstances and the repeated events that were going on. First, Jang was expelled from school. Then Jang applied for a marriage license and was detained for 24 hours while his wife was taken for an abortion. Then when Jang and his wife tried to get married anyway in a traditional ceremony, on that morning, 10 Chinese family planning officials came to their house in order to break up the ceremony and arrest the couple. Jang had to flee out the back of his mother's door in order to avoid arrest, and his ceremony was not held. At that point, Jang and his wife both hid in separate locations and no longer lived together. Jang left his family and friends and job and moved 10 hours away to a friend's house in order to hide. Let me ask you this. The BIA decision talks about the fact that there's no per se assumption that a spouse of somebody who was forced to undergo an abortion is entitled to a finding of past persecution. But in concluding that there was no past persecution in this case, the BIA's analysis really didn't rely on our discussions in Jang in the recent cases that talk about what constitutes other resistance, specifically as to China's population control policy. Why shouldn't we remand it to the BIA to give them the benefit of Jang and take another look at this case? It came out before the board's decision in this case, and undoubtedly it would make all of our jobs easier if they had cited to Jang, and indeed it was the leading case from this court, and so perhaps it would be reasonable to think that they would have cited to Jang. However, they did cite to JS, which Jang was implementing in this court, and also we have the presumption of regularity that the board knows what the law is and is implementing the law. Now, if their analysis was conflicting with Jang, then I would certainly agree that this case would need to be remanded in order for them to address Jang and show how this case comports with Jang. However, this case does comport with Jang, and we have the assumption that they knew about Jang. So while they did not specifically cite to it, they weren't required to cite to Jang in particular. What troubles me about the BIA's analysis, specifically as to whether the harm rose to the level of past persecution, is that the BIA cited to Huxha and Gu cases that talk about what sort of mistreatment, essentially physical mistreatment, rises to the level of past persecution. But specifically in the context of forced abortion cases for the spouse or significant other, we have found in Jang that there doesn't have to be physical violence in order to constitute other resistance that could rise to the level of past persecution. That's why it's really unclear whether the BIA really considered Jang and specifically the context of forced abortions that are present in this case. How do you respond to that? To address your question, first, the board was looking at this case in pieces. First, did he have other resistance? Then, did the harm rise to the level of persecution? And so they separated those two concepts out. They assumed, arguendo, he did resist to the policy. So then they were looking at just, did the harm rise to the level of persecution? While they didn't cite Jang, and they did cite other cases that didn't involve forced abortion, Jang didn't actually change the idea of what constitutes harm rising to the level of persecution. When Jang makes its rising to the level holding, it cites Guo and Koroblina, neither of which involved forced abortions. Guo involved a Chinese Christian persecution, and Koroblina involved a Russian living in Ukraine. So neither of these cases dealt with persecution involving a spouse who was forced to have an abortion. And when making its analysis, Jang once again went to, this is the totality of the circumstances. These are all of the events that happened to this petitioner. So when the board looked at Nia's case, it also cited cases that admittedly did not look specifically at cases involving spouses who had had past abortions. But it did look at cases that involved the totality of the circumstances and whether or not the harm that's described rises to the level of persecution. That's a pretty critical omission in concentrating, as actually your briefs did, on just the sheer level of physical harm. The analysis is much more nuanced when you're talking about resisting a policy. And there's been a considerable amount of Ninth Circuit law that's emerged since the 2010 decision in Jang, which is not discussed by the board or by either of you in your written submissions. So where you have such a nuanced decision that the BIA has to make in this area, why not send it back to them and let them take a look at this developing area of the law and help us in figuring out when resistance to an event constitutes resistance to a policy. It doesn't surprise me that a spouse or partner is going to get beaten up when his wife or lover is dragged away for a forced abortion. But that doesn't necessarily constitute, at least in my mind, resistance to a policy. And the fact patterns are very specific. Why not send it back and let the BIA take the first cut at this? What would the BIA do if the BIA has already assumed there was resistance? Then what would a remand do in terms of the determination of whether there was resistance? I guess I don't understand what the BIA would be called upon to do if the BIA has already assumed there was resistance and then moved to whether or not the harm that occurred on account of that resistance rose to the level of persecution. Well, in order to try to address both of your questions, if this Court finds that the evidence here compels the conclusion that this person experienced harm rising to the level of past persecution, at that point the Court could remand. And at that point the Board could then look at any of the issues in order to either state that this person has met the standard for asylum or he has not. And among the issues that the Board could address in remand, they could look, since they only assumed arguendo at this point, that this person had resisted, they could make a finding on other resistance. Or alternatively, they could make a finding on whether or not the presumption of future persecution has been rebutted. Or arguably, they could make a determination on petitioner's credibility. Our bottom line is to determine whether or not the BIA, whether substantial evidence supports the denial of relief. That's correct. Not whether the BIA cited a particular case or engaged in a particular analysis. That is correct. We must assume that the Board was aware of this Court's law. That is the presumption of regularity that is owed the agency. So unless we see that the evidence is compelling the conclusion that they weighed the evidence before them incorrectly and that no reasonable adjudicator would have found what they were finding or substantial evidence did not support that finding, then at that point this Court could remand. But otherwise, this Court would not be able to do so. All right. Thank you, Counsel. Thank you. I do believe the right thing to do is to remand it. It is true the BIA's decision, the key issue here is past persecution and the cases the BIA is citing is not on point because we're dealing with the family. They don't have to cite the appropriate case if the analysis is sound. Even the analysis is really lacking. They're citing cases and just generally saying that being kicked in the stomach, punched, and the fine is not enough. But you were arguing when you were here before, you were arguing the fact that he was kicked and punched, his nose was bleeding. So those are the kinds of considerations that go into determining whether or not the physical harm rose to the level of persecution, which is not. It has to rise to a level of seriousness in order to be considered persecution. My argument is that the analysis is flawed only because it's not taking into consideration other important facts, these facts coupled with the fact that his wife was forced to have an abortion. So my argument is that the BIA erred in finding that the petitioner did not establish past persecution. The severe beating, the kicking, the multiple being held down, and the wife being taken away, if you take the totality of the circumstance, I do believe that the analysis is lacking. Your argument is, if I understand it correctly, that in this case the harm is just as severe, if not more so than the facts of Zhang. And if Zhang rose to the level of past persecution, then this case also must rise to the level of past persecution. Exactly. And in the cases that the BIA is citing, we're not dealing with forced abortion, which in itself is very traumatic. I mean, I don't think we could disagree with that, that witnessing your wife being taken away and forcibly violated is definitely traumatic in itself. So I think the totality of the circumstance coupled with the abortion does amount to past persecution. I do believe that the analysis is flawed. And I would ask that it is remanded for a second review. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case as argued is submitted for decision by the court.
judges: Ponsor, Rawlinson, Nguyen